IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROMANCE GUNN,

Plaintiff,

v.

HEATHER THIELEN,

Defendant.

OPINION and ORDER

24-cv-919-jdp

Plaintiff Romance Gunn, proceeding without counsel, alleges that a correctional officer, defendant Heather Thielen, ignored him when he told her that he was ill and about to faint, which caused him to pass out and hit his head. Gunn is proceeding on an Eighth Amendment medical care claim for damages. He is currently incarcerated at Kettle Moraine Correctional Institution, but the events occurred at Columbia Correctional Institution.

Thielen moves for summary judgment. Dkt. 28. Gunn did not file a response. There is no evidence to suggest that Thielen knew that Gunn, whom medical staff had recently evaluated, required additional care or was at risk of fainting. I will grant the motion and close the case.

## UNDISPUTED FACTS

Gunn did not respond to Thielen's motion for summary judgment even though I extended the time to respond by nearly a month. *See* Dkt. 36. I will therefore accept Thielen's proposed facts as undisputed. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020) (stating that all litigants must comply with the court's orders and rules); *Smith*

*v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

With that background, the following facts are undisputed.

On July 25, 2024, Gunn was involved in a fight during recreation. *See* Dkt. 22 at 2. On August 8, 2024, Sukowaty diagnosed him with a post-concussive headache, which can last up to eight weeks. *See id.* at 3.

On August 14, 2024, Gunn was housed in the restrictive housing unit (RHU). A due process hearing was scheduled for 8:30 a.m. but, after a delay, Gunn was taken to the health services unit (HSU). Gunn had expected to be taken to the hearing directly from his cell, which would have allowed him to take his paperwork to the hearing.

Around 11:00 a.m., Thielen was instructed to take Gunn to his due process hearing. So she went to the RHU exam room, where Gunn was being seen by HSU staff. HSU staff did not tell Thielen that Gunn had any injury or related restrictions.

During escort, Gunn started complaining that he had not been able to get his paperwork, which he said he needed because it was a major hearing. Thielen acknowledged his concerns.

Gunn continued to complain about missing his paperwork as he and Thielen reached the building in which the hearing was to be held. The pair encountered Lieutenant Price, and Gunn started to make the same complaints to him. At one point, Gunn briefly told Price that he was recently at a "doctor's appointment for a concussion." Dkt. 30 ¶ 38. Thielen did not hear Gunn make this remark at that time; she first realized that he had made it when reviewing body-worn camera video to prepare her declaration. *Id.* ¶ 39. Thielen did not hear Gunn tell Price that he needed medical attention.

The trio reached the area where due process hearings are held, and Thielen placed Gunn in a holding cell. Later, Lieutenant Fitzsimmons asked Thielen to move Gunn to a different holding cell while Fitzsimmons obtained video for the hearing. When Thielen went to the first holding cell, Gunn muttered something about the brightness of the light in that cell, though Gunn did not understand him. *See id.* ¶ 49; Dkt. 33 (12:01–07). Thielen then escorted Gunn to the second holding cell. When they arrived, Thielen asked Gunn if he wanted water, which he declined. Thielen noticed that Gunn had two rubberbands on his left wrist and told him that she was going to take them. Gunn responded that they were for his hair, so she let him keep them. Thielen then left to attend to other duties.

Gunn alleges that he fainted and hit his head on a metal table after Thielen ignored him, *see* Dkt. 1 ¶ 22, but no evidence supports this allegation, *see* Dkt. 30.

ANALYSIS

Gunn is proceeding on a federal medical care claim against Thielen based on allegations that she failed to respond when he yelled that he was "very sick" and about to faint. Dkt. 13 at 5. Gunn alleges that in response to those complaints, Thielen told him to stop yelling and that nothing was wrong with him. *Id.* (court's summary of complaint's allegations). Gunn adds that he fainted and injured his head because Thielen failed to respond to those complaints. *Id.*

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Gunn must show that he had an objectively serious medical condition that Thielen consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Conscious disregard requires that Thielen is subjectively aware of that need. *Id.* That means

that Thielen knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and she actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

I will assume for purposes of this opinion only that: (1) Gunn's post-concussive headache and the possibility that he could faint from that condition was an objectively serious medical need; and (2) Gunn actually fainted and hit his head due to his post-concussive headache. The issue is whether Thielen consciously disregarded the risk that he could faint due to his post-concussive headache.

Based on the undisputed facts, no reasonable fact-finder could reach that conclusion. Thielen went to the RHU room to get Gunn, but no HSU staff member told her that he had post-concussive headaches or any related medical condition, much less that he was at risk of fainting. While Thielen and Price escorted Gunn, he told Price that he was at a doctor's appointment for a concussion. But Thielen did not hear Gunn make that brief remark. But even had Thielen heard him, no evidence suggests that she thought that he required additional medical attention at that point. HSU staff had just treated Gunn, and he was walking and talking to the officers about non-medical matters. Gunn alleged in his complaint that he yelled to Thielen that he was "very sick" and about to faint. But this allegation, which is not made under penalty of perjury, *see* Dkt. 1 at 4, 10, is contradicted by the facts supported by evidence. Gunn and Thielen's communications did not involve medical matters. At one point, Gunn seemed to say that the light in his holding cell was too bright, but Gunn did not understand him. Besides, on its face, that statement was about a non-medical matter and would not have caused Thielen to realize that he required additional medical care or was at risk of fainting. I will grant summary judgment to Thielen and close the case.

ORDER

IT IS ORDERED that:

1. Defendant Heather Thielen's motion for summary judgment, Dkt. 28, is GRANTED.

2. The clerk of court is directed to enter judgment and close the case.

Entered October 19, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge